1
2
3
4
5          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
6

7   BRANDON LEE McMANIS,                No.  CV-13-00421-JTR

8            Plaintiff,
                                        ORDER GRANTING DEFENDANT'S
9                                       MOTION  FOR SUMMARY
         v.                             JUDGMENT
10

11  CAROLYN W. COLVIN,
    Commissioner of Social Security,
12

13           Defendant.

14

15       **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

16  Nos.  15, 16.  Attorney Dana C. Madsen represents Plaintiff, and Special Assistant

17  United States Attorney Sarah L. Martin represents the Commissioner of Social

18  Security (Defendant).  The parties have consented to proceed before a magistrate

19  judge.  ECF No. 7.  After reviewing the administrative record and the briefs filed

20  by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment

21  and **DENIES** Plaintiff's Motion for Summary Judgment.

22                          **JURISDICTION**

23       On January 31, 2011, Plaintiff filed both a Title II application for a period of

24  disability and disability insurance benefits and a Title XVI application for

25  supplemental security income.  Tr. 16; 60; 67.  The parties agreed to an amended

26  onset date of April 17, 2007.  Tr. 43.  Plaintiff reported that he was unable to work

27  due to development disability, because he was developmentally slow and he had

28  learning problems.  Tr. 218.  The claims were denied initially and on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

reconsideration, and Plaintiff requested an administrative hearing.  Tr. 16; 60-100; 104-13.

On August 14, 2012, Administrative Law Judge James W. Sherry presided over a hearing at which medical expert Ellen Rozenfeld, Ed.M., Psy.D., and vocational expert Jinnie Lawson, and Plaintiff, who was represented by counsel, testified.  Tr. 31-59.  On September 13, 2012, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 16-26.  The Appeals Council declined review.  Tr. 1-4. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 23 years old, single, and living with his parents.  Tr. 43-44.

Plaintiff said he has a 12th grade education, and his mother began homeschooling him in the seventh grade.  Tr. 44; 288.  While he was in public school, Plaintiff was enrolled in special education classes.  Tr. 288.

He testified that he can read a newspaper, but he does not understand big words, and he can perform simple math.  Tr. 44.  Plaintiff said if he gets a letter in the mail, his mother has to read it to him.  Tr. 47.

Plaintiff said he does not have a driver's license because he "cannot sit down and read that book."  Plaintiff also said that he is able to read bus schedules and can figure out how to get places on the bus.  Tr. 48.  Plaintiff testified that he spends his time swimming, watching movies and playing games, but he does not leave the house often.  Tr. 49.  He occasionally walks to the store, and he can purchase items from a grocery list prepared by his mother and return home with the correct items.  Tr. 49-50.

Plaintiff testified that he has worked as a dishwasher for brief periods in the past.  Tr. 46.  He said he could not work as a dishwasher today, because he cannot

1  pass the food handler's exam.  Tr. 52.

2  <strong>STANDARD OF REVIEW</strong>

3       The ALJ is responsible for determining credibility, resolving conflicts in

4  medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

5  1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with

6  deference to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*,

7  201 F.3d 1084, 1087 (9th Cir. 2000).   The decision of the ALJ may be reversed

8  only if it is not supported by substantial evidence or if it is based on legal error.

9  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

10  defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at

11  1098.  Put another way, substantial evidence is such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

13  *Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one

14  rational interpretation, the court may not substitute its judgment for that of the

15  ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*,

16  169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by

17  substantial evidence will still be set aside if the proper legal standards were not

18  applied in weighing the evidence and making the decision.  *Brawner v. Secretary*

19  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial

20  evidence supports the administrative findings, or if conflicting evidence supports a

21  finding of either disability or non-disability, the ALJ's determination is conclusive.

22  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

23  <strong>SEQUENTIAL PROCESS</strong>

24       The Commissioner has established a five-step sequential evaluation process

25  for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

26  416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one

27  through four, the burden of proof rests upon the claimant to establish a prima facie

28  case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This

burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 17, 2007, the amended alleged onset date.  Tr. 18.  At step two, the ALJ found Plaintiff suffered from the severe impairments of borderline intellectual functioning/learning disorder, dysthymia, schizotypal personality disorder with dependent features.  Tr. 18.  At step three, the ALJ found Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 19.  The ALJ found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [S]imple routine repetitive tasks, occasional changes in the work setting where changes can be explained, learn best by verbal instructions, no complex written instructions, no fast paced production requirements, occasional superficial interaction with the general public, superficial interaction with co-workers no joint or shared tasks, occasional interaction with supervisors, can work in proximity to others.

Tr. 21.  At step four, the ALJ found that Plaintiff is capable of performing past

relevant work as a dishwasher.  Tr. 24.  In the alternative, the ALJ determined that considering Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers that Plaintiff can perform, such as laundry worker, housekeeper cleaner, and car washer steam cleaner.  Tr. 25.  As a result, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision.  Tr. 26.

**ISSUES**

Plaintiff contends the ALJ erred by: (1) finding Plaintiff did not meet Listing 12.05(C); (2) finding Plaintiff lacked credibility; and (3) improperly weighing the medical opinions.  ECF No. 15 at 11-18.

**A.    Listing 12.05(C)**

Plaintiff argues that the ALJ erred by finding he did not meet Listing 12.05(C).  The disagreement between the parties is whether the ALJ erred by finding Plaintiff's Full Scale IQ Score of 61 was invalid.  ECF No. 15 at 12-13; ECF No. 16 at 5-6.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment.  The claimant bears the initial burden of proving that his or her impairments meet or equal a Listing.  *See Sullivan v. Zebley,* 493 U.S. 521, 530-33, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  To "meet" a listed impairment, a disability claimant must establish that his condition satisfies every element of the listed impairment in question.  *See Sullivan,* 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.  To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the Listing.  *Tackett,* 180 F.3d at 1099.

At issue in this case is whether Plaintiff meets Listing 12.05(C), entitled intellectual disability (formerly called mental retardation):

///

1

2

3

4

5

6

7

8

9

   Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

…

   C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

10   20 C.F.R. Pt. 404, Subpart. P, App. 1, §1205.  A claimant satisfies Listing

11   12.05(C), demonstrating "intellectual disability" and ending the five-step inquiry, if

12   he can show: (1) subaverage intellectual functioning with deficits in adaptive

13   functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and

14   (3) a physical or other mental impairment imposing an additional and significant

15   work-related limitation.  *Kennedy v. Colvin,* 738 F.3d 1172, 1174 (9th Cir. 2013);

16   see 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 12.05(C).

17     Plaintiff argues that he meets Listing 12.05(C), because the result of his Full

18   Scale IQ test was 61.  ECF No. 15 at 12.  On April 12, 2011, James E. Bailey,

19   Ph.D., examined Plaintiff.  Tr. 255-59.  Dr. Bailey administered a mental status

20   exam, the WAIS-IV, and the WMS-III.  Dr. Bailey opined that Plaintiff's full scale

21   IQ score of 61 did not accurately describe Plaintiff's functioning:

22

23     Overall, Full Scale IQ is technically within the mildly mentally

24     retarded range.  However, his overall functioning is typical of

    someone with a borderline intellectual functioning. Verbal and

25     Perceptual Reasoning are within the borderline range.  He has poor

    Working Memory and Processing Speed and likely is a person who

26     does not push himself either behaviorally today or chronically.

27

28   Tr. 257-58.  Dr. Bailey also noted that Plaintiff's memory scale scores are within

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

the average range of functioning, and his overall memory scores "are superior to IQ scores and are generally in the normal range of functioning." Tr. 258. Dr. Bailey diagnosed Plaintiff with Borderline Intellectual Functioning. Tr. 258. Dr. Bailey stated that Plaintiff is capable of superficial public and coworker contact, he is limited to simple, repetitive tasks, and he would not be able to perform tasks with academic demands. Tr. 259.

Ellen J. Rozenfeld, Ed.M., Psy.D., testified at the administrative hearing. Tr. 36-42. Dr. Rozenfeld addressed Plaintiff's Full Scale IQ score of 61. Tr. 41-42. Dr. Rozenfeld concurred with Dr. Bailey's explanation of why Plaintiff's IQ score was not an accurate representation of Plaintiff's functioning. Further, she agreed with Dr. Bailey that the evidence – especially school records and daily activities – did not support mild mental retardation, and instead supported Dr. Bailey's diagnosis of Borderline Intellectual Functioning. Tr. 41.

The ALJ rejected the IQ score and relied upon Dr. Rozenfeld's opinion that Plaintiff's working memory index score – placing him in the 8th percentile – was an inaccurate reflection of his true ability, in light of his performance on the Weschler memory Scale – placing him in the average range. The ALJ also relied upon Dr. Rozenfeld's explanation that the low memory index scores "inaccurately brought down the full-scale score because the Full Scale Score comes from a formula that relies on the Working Memory Index." Tr. 21.

The central issue is whether the ALJ properly invalidated Plaintiff's IQ test score. The Ninth Circuit Court of Appeals has not delineated what evidence an ALJ should consider in assessing whether IQ scores are "valid." However, a Ninth Circuit district court addressed evidence an ALJ may consider in assessing the validity of IQ scores. *See Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131-35 (C.D. Cal. 2008) (summarizing considerations from out-of-circuit cases, such as whether the evidence shows a high possibility of malingering, daily activities inconsistent with the IQ scores, inconsistencies between test results, and conflicting medical

opinions).

In *Wedge*, the district court reversed and remanded for an award of benefits because the ALJ erred by finding the plaintiff's IQ scores invalid. *Wedge*, 624 F. Supp. 2d at 1133-34. The ALJ in *Wedge* relied upon a reviewing physician who, without explanation, declared the claimant's IQ test scores invalid. On review, the *Wedge* court held it was error to rely upon a reviewing physician's rejection of an IQ score when the score was rejected without any explanation. Also, the *Wedge* court found that the reviewing physician's opinion conflicted with other evidence in the record, and thus the *Wedge* ALJ erred by relying heavily upon that opinion. *Id*. at 1133-34.

This case is distinguishable. In this case, the ALJ relied upon a specific explanation from Dr. Rozenfeld explaining why the IQ score was invalid. Dr. Rozenfeld relied upon Dr. Bailey's interpretation of the test results, and on Dr. Bailey's conclusion that Plaintiff is capable of working. The ALJ's stated reasons, coupled with substantial evidence in the record, are sufficient to reject the validity of Plaintiff's Full Scale IQ Score. The ALJ relied upon both Dr. Bailey and Dr. Rozenfeld in determining the IQ score did not represent Plaintiff's full functioning.

Moreover, the record supports the doctors' opinions that Plaintiff's daily activities are inconsistent with mild mental retardation. For example, Plaintiff walks about one mile to the store, shops from a list, completes the transaction and walks home. Tr. 49. Plaintiff also testified that if he does not know how to get somewhere, he can travel to the bus transit station, study the schedules, and determine how to get to his destination. Tr. 48. In sum, the ALJ's determination that Plaintiff's Full Scale IQ Score of 61 was invalid was supported by sufficient explanation and substantial evidence, and thus the ALJ did not err.

**B.    Credibility**

Plaintiff argues that the ALJ erred by relying upon inconsistencies in the record and a lack of objective evidence as reasons for discrediting Plaintiff. ECF

No. 15 at 13.

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834. If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen,* 885 F.2d 597, 602-04 (9th Cir. 1989); *Bunnell*, 947 F.2d at 346-47.

As the ALJ found, the treatment record and Plaintiff's actual functioning contrast Plaintiff's claims of disability. Tr. 22; 257. The ALJ relied in part on Plaintiff's abilities demonstrated during the Trail Making tests, which Plaintiff finished and made no errors. Tr. 22; 257. The ALJ also relied upon Plaintiff's activities of playing on the computer for five hours per day, walking a mile to the store to make purchases, and his performance of household chores. Tr. 22; 255-57.

Plaintiff also contends that the ALJ erred by concluding that the "deciding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

issue" was a lack of objective evidence to support his allegations of disabling level of impairment.  Tr. 22; ECF No. 15 at 14.  In considering credibility and allegations of pain testimony, the Ninth Circuit has indicated that relying solely upon a lack of objective evidence is error:  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

In this case, despite the ALJ's unfortunate word choice, the decision reveals the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff.  Instead, the objective medical evidence was simply considered as one of the relevant factors in determining Plaintiff's credibility.

"If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).  In this case, the ALJ's credibility finding is supported by substantial evidence in the record, and thus Plaintiff's challenge fails.

## C.    Medical Opinions

Plaintiff argues that the ALJ erred by giving little weight to the opinion of John Arnold, Ph.D.  ECF No. 15 at 17-18.

Dr. Arnold examined Plaintiff on July 20, 2012.  Tr. 287-94.  In his report, Dr. Arnold agreed with Dr. Bailey's findings that while Plaintiff's test scores were

technically consistent with mild mental retardation, Plaintiff's limitations were more consistent with borderline intellectual functioning.  Tr. 289.  Dr. Arnold also found that Plaintiff's response to his mental status exam was consistent with Dr. Bailey's interpretation.  Tr. 289.

However, in the check-the-box form, Dr. Arnold assessed Plaintiff with severe limitations in the ability to (i) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (ii) work in coordination with or proximity to others without being distracted by them; (iii) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (iv) the ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. 293.  Dr. Arnold also assessed Plaintiff with multiple marked limitations in the ability to: (i) carry out detailed instructions; (ii) sustain an ordinary routine without special supervision; (iii) interact appropriately with the general public; and (iv) respond appropriately to changes in the work setting.  Tr. 292-93.

The ALJ gave little weight to the opinions from Dr. Arnold, calling his assessment of limitations "overstated."  Tr. 24.  The ALJ explained that Dr. Arnold indicated he agreed with Dr. Bailey's interpretation of Plaintiff's test results, but his severe findings were incongruent with Dr. Bailey's test results.  Also, the ALJ found that no objective medical basis existed for the marked and severe impairments, and Dr. Arnold's opinions were the most restrictive in the record and "out of line with" the other doctor opinions.  Tr. 24.

Plaintiff argues that the ALJ erred by using boilerplate – Dr. Arnold overstated Plaintiff's limitations – and by failing to provide a proper level of specificity in rejecting Dr. Arnold's opinions.  ECF No. 15 at 18.  However, Plaintiff fails to acknowledge that the ALJ explained why the assessed limitations were overstated, in addition to giving other reasons, such as the record did not

support Dr. Arnold's severe and marked assessments.  Tr. 24.  Plaintiff does not
challenge any of the other reasons asserted by the ALJ for giving little weight to
Dr. Arnold's opinion and those reasons are valid and supported by substantial
evidence.  As a result, the ALJ did not err in assessing Dr. Arnold's opinions.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that
the ALJ's decision is supported by substantial evidence and free of legal error.
Accordingly,

**IT IS ORDERED**:

1.    Defendant's Motion for Summary Judgment, **ECF No. 16**, is
**GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15,** is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this
Order, provide copies to the parties, enter judgment in favor of defendant, and
**CLOSE** this file.

DATED January 8, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12